13625

DETROIT FIDELITY & SURETY CO. v. FOSTER *ET AL*

*IN RE* CANNON

(169 S. E., 871)

122

126

*Messrs. Lyles & Daniel,* for appellant,

*Messrs. Nicholls, Wyche & Russell,* for respondent,

June 16, 1933.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

As a statement of this case the Court adopts the following agreed statement of counsel appearing in the transcript of record:

"This is an appeal from an order of Honorable T. S. Sease, resident Circuit Judge, vacating, under provisions of Section 495, Code 1932, a judgment in the amount of $10,-000.00, rendered in favor of the plaintiff, Charlie Cannon, against the defendants R. G. and A. G. Foster, partners under the name of Virginia General Contracting Company, and Detroit Fidelity & Surety Company.

"The action was originally commenced on February 10, 1930, against the defendants above named and State Highway Department of South Carolina. It was a suit for damages for personal injury alleged to have been sustained by the plaintiff, Charlie Cannon, from negligent failure of the defendants Virginia General Contracting Company to furnish him safe instrumentalities for doing his work while he was in its employ in connection with the construction of a bridge over Tyger River on State Highway No. 56, which bridge was being constructed by the defendant Virginia General Contracting Company under a contract with the State

Highway Department. The defendant surety company was made a party defendant because it had executed the bond required of the Virginia General Contracting Company by the State Highway Department, and the State Highway Department of South Carolina was made a party defendant because the bridge was being constructed in connection with a State highway project.

"The State Highway Department interposed a demurrer to the complaint, for insufficiency of facts apparent on its face to state a cause of action against it. The other defendants filed no answer or demurrer.

"The case was tried April 6, 1932, before Honorable W. H. Grimball, presiding Circuit Judge, in the Court of Common Pleas for Spartanburg County, and a jury. At the beginning of the case, counsel representing the plaintiff, in the absence of counsel for State Highway Department, suggested to the Court that it sustain the demurrer of the State Highway Department. Thereupon, in the absence of any other party defendant or any counsel for them, plaintiff proceeded to prove his case, and it resulted in a verdict for the plaintiff in the sum of $10,000.00, the full amount sued for. Judgment was entered thereon on May 3, 1932.

"On July 12, 1932, the defendant Detroit Fidelity & Surety Company, through its attorneys, Messrs. Nicholls, Wyche & Russell, served its notice and petition to vacate the judgment. The motion was heard by Judge Sease on the record, affidavits, and oral testimony. He made an order vacating the judgment as to all defendants on July 29, 1932."

From the said order of the Circuit Judge, vacating the judgment as to all of the defendants, the plaintiff, pursuant to due notice, has appealed to this Court.

For the purpose of a clear understanding of the petitioner's position we quote in full the petition herewith, which the surety company presented to his Honor, the Circuit Judge:

"Your petitioner would respectfully show to the Court:

"1. That petitioner is one of the defendants in the above entitled action; the Summons and Complaint in said action were served upon the Insurance Commissioner of South Carolina on February 10, 1930; the Complaint in said action was filed and docketed on Calendar one of the Court of Common Pleas for Spartanburg County of October 30, 1930; petition and bond for removal by your petitioner were filed in the office of the Clerk of Court for Court of Common Pleas in Spartanburg County on March 4, 1930; the State Highway Department, one of the defendants in the above action, demurred to the Complaint, and, by proper order, such demurrer was sustained; petitioner is informed and believes that no affidavit of default as to any of the defendants was made by the plaintiff or any of his attorneys; the case was tried at the April, 1932, term of the Court of Common Pleas for Spartanburg County, without the presence of your petitioner, or the defendants, R. G. and A. G. Foster, now or formerly partners under the name of Virginia General Contracting Company, or any attorney representing either of said defendants, and a verdict was returned against your petitioner and defendants, R. G. and A. G. Foster, now or formerly partners under the name of Virginia General Contracting Company, for an amount of Ten Thousand ($10,000.00) Dollars damages; judgment was duly entered upon the verdict as rendered on May 3, 1932, for the sum of Ten Thousand ($10,000.00) Dollars and the costs of the action.

"2. That on February 18, 1930, your petitioner addressed a letter to Ashley C. Tobias, Jr., a reputable attorney at the Columbia, South Carolina, bar, and enclosed to him a copy of the Complaint served upon petitioner, as of February 10, 1930, in the above entitled action; receipt of this letter and the Complaint attached thereto was acknowledged by Ashley C. Tobias, Jr., by telegram of date February 25, 1930, and by letter of the same date; an answer in the case was forwarded to the Detroit Fidelity & Surety Company by Ashley

C. Tobias, Jr., as an attachment to his letter of February 25, 1930, and such answer was duly verified by Ralph J. Daly, Vice-President of the Detroit Fidelity & Surety Company, and returned to Ashley C. Tobias, Jr., as an attachment to a letter dated March 1, 1930; all of which is shown by affidavit of J. B. Tidman, hereto attached, marked Exhibit 'A,' and made a part hereof.

"3. That the said Ashley C. Tobias, Jr., was authorized to verify the petition for removal of the above cause to the United States, District Court by a telegram dated February 25, 1930, and the said Ashley C. Tobias, Jr., was also authorized to execute a removal bond with the Detroit Fidelity and Surety Company as principal, and to request the Southern Surety Company to execute the same as surety on such obligation, all of which is shown by the affidavit of J. B. Tidman, heretofore referred to and made a part hereof.

"4. That your petitioner having employed the said Ashley C. Tobias, Jr., as its attorney to represent and protect your petitioner's interest, felt assured that the interest of the Detroit Fidelity and Surety Company was being protected either by filing the answer which the petitioner had verified and serving the same upon attorneys for the plaintiff, or by removal of the suit to the Federal Court for the Western District of South Carolina; that the said Ashley C. Tobias, Jr., had theretofore represented your petitioner as its attorney in litigations in the State of South Carolina, and your petitioner was led to believe that its interest would be protected, not only because of the various communications on file in the office of this petitioner, but by reason of the most able and competent representation of the interests of your petitioner in other litigated matters handled by the said Ashley C. Tobias, Jr., for your petitioner throughout the State of South Carolina, as shown by affidavit of J. B. Tidman, aforementioned and of C. D. Everard, hereto attached, marked Exhibit 'B,' and made a part hereof.

"5. That your petitioner is informed and believes that

through some misunderstanding, mistake, inadvertence, excusable neglect, the said Ashley C. Tobias, Jr., as set forth in his affidavit and the affidavit of Nat Turner, both of which are hereto attached, marked Exhibits 'C' and 'D' respectively, and made a part hereof, failed to perfect the removal of the said case to the United States District Court for the Western District of South Carolina, and failed to serve the answer which your petitioner had duly verified upon plaintiff or plaintiff's attorneys.

"6. That your petitioner, and the defendants, R. G. and A. G. Foster, now or formerly partners under the name of Virginia General Contracting Company, have a good defense to the cause of action set out in the Complaint in the above entitled case, and for the reasons heretofore set forth, and upon the grounds set forth in the affidavits hereto attached, your petitioner is entitled to have the judgment against your petitioner and the defendants, R. G. and A. G. Foster, now or formerly partners under the name of Virginia General Contracting Company, set aside and declared null and void, and to have an opportunity to file an answer to the Complaint in said cause, and to have the issues made thereby duly tried in the Court of Common Pleas for Spartanburg County.

"7. That your petitioner is informed and believes that the defendants R. G. and A. G. Foster, now or formerly partners under the name of Virginia General Contracting Company, are insolvent, and that your petitioner would be liable upon the judgment returned against the defendants, R. G. and A. G. Foster, now or formerly partners under the name of Virginia General Contracting Company, and for this reason and the reasons heretofore set forth, your petitioner and the defendants, R. G. and A. G. Foster, now or formerly partners under the name of Virginia General Contracting Company, are entitled to be relieved from the aforesaid judgment and to have the same set aside and declared null and void.

"Wherefore, your petitioner prays that the judgment heretofore rendered against your petitioner and the defendants, R. G. and A. G. Foster, now or formerly partners under the name of Virginia General Contracting Company, in the above entitled case, be set aside, declared null and void, and that your petitioner be relieved from the same by proper order of this Court.

"NICHOLLS, WYCHE & RUSSELL,

"<em>Attorneys for Petitioner</em>"

The section of the Code 1932, Section 495, relied on by the defendant Detroit Fidelity & Surety Company, as giving the Circuit Judge authority for granting the petition, and issuing the order thereon, reads as follows: "Court May Give Relief in Case of Mistake.—The Court may likewise, in its discretion, and upon such terms as may be just, allow an answer or reply to be made, or other act to be done, after the time limited by this Code of Procedure, or, by an order, enlarge such time; and may also, in its discretion and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order, or other proceeding, taken against him through his mistake, inadvertence, surprise, or excusable neglect, and may supply an omission in any proceeding; and whenever any proceeding taken by a party fails to conform in any respect to the provisions of this Code of Procedure, the Court may, in like manner, and upon like terms, permit an amendment of such proceeding, so as to make it conformable thereto."

The petition quoted above sets forth the position of the defendant Detroit Fidelity & Surety Company in moving in the lower Court for an order vacating the judgment in question. As stated, the State Highway Department filed a demurrer to the complaint, "for insufficiency of facts apparent on its face to state a cause of action against it," which demurrer the Court sustained. The other defendants, R. G. and A. G. Foster, etc., and Detroit Fidelity & Surety Company, defaulted, having filed no answer or demurrer, and

the case went to trial resulting in a verdict for the plaintiff as above stated. As we view the case, the main question presented to this Court is, Has the petitioner, Detroit Fidelity & Surety Company, shown excusable neglect in failing to comply with the provisions of the Code and in allowing judgment against it in the manner set forth above?

The action, the purpose of which is stated in the agreed statement set forth above, was commenced in February, 1930, and service was duly made upon all of the defendants, the defendant Detroit Fidelity & Surety Company being served, in the manner prescribed by law. February 10, 1930. We agree with the position of the plaintiff that it was not necessary to make the surety company a party to the suit along with the other defendants; that he could have left out the surety company and obtained judgment against the contractors R. G. and A. G. Foster, etc., alone, and that this would have fixed the liability of the surety company, there being no charge of collusion against the Fosters. But the plaintiff saw fit to bring into the suit the surety company and give it an opportunity to defend for itself and on behalf of the contractors, and thus, if able to do so, prevent the plaintiff from obtaining judgment in the case, and, therefore, protect itself. Having been made a party to the suit and duly served, it was, in our opinion, the duty of the surety company to defend its rights in this suit from the time service was made upon it, and not, in any sense, depend upon the contractors, R. G. and A. G. Foster, to defend the suit or protect its rights in the same.

According to the contention of the petitioner, the said Detroit Fidelity & Surety Company, which contention is supported by affidavit, it received from Mr. Tobias, its attorney, attached to his letter of February 25, 1930, answer for verification, which was verified and promptly returned, and at the same time said attorney was authorized to verify petition for removal of the case to the United States District Court; also, was authorized to execute

a removal bond, with this defendant as principal, and, further, was authorized to request the Southern Surety Company to execute the said bond as surety on such obligation. The affidavit supporting this statement was executed by J. B. Tidman who, according to his statement, was at that time employed as this defendant's attorney and adjuster at its home office, Detroit, Mich. Mr. Tidman's affidavit, as appears in the transcript of record, reads as follows:

"I, J. B. Tidman, of Newark, New Jersey, being duly sworn, do depose and say as follows:

"1. That from July 15, 1925, to April 15, 1930, I was employed by the Detroit Fidelity and Surety Company as their attorney and adjuster in their home office in Detroit, Michigan.

"2. That it was a part of my duties as attorney and adjuster to refer cases in litigation against the Detroit Fidelity and Surety Company to attorneys selected to represent that company in the various states in which it was licensed to do business.

"3. While I represented the Detroit Fidelity and Surety Company, on February 18, 1930, I addressed a letter to Ashley C. Tobias, Jr., attorney at law, Columbia, South Carolina, and attached to such communication a copy of a Complaint served upon the Detroit Fidelity and Surety Company by Sam B. King, Insurance Commissioner for the State of South Carolina, as of February 10, 1930, in connection with the suit entitled Charlie Cannon versus R. G. and A. G. Foster, and the Detroit Fidelity and Surety Company.

"4. That receipt of this letter and the Complaint attached thereto was acknowledged by Ashley C. Tobias, Jr., by telegram dated February 25th, 1930, and by letter of the same date.

"5. And that an answer in the case was forwarded to the Detroit Fidelity and Surety Company by Ashley C. Tobias, Jr., as an attachment to his letter of February 25th, 1930,

and that such answer was duly verified by Ralph J. Daly, Vice-President of the Detroit Fidelity and Surety Company, and returned by me to Ashley C. Tobias, Jr., as an attachment to a letter dated March 1st, 1930.

"6. That I further authorized Ashley C. Tobias, Jr., to verify petition for the removal of this case to the United States District Court by a telegram dated February 25, 1930, and that I also authorized Mr. Tobias by a telegram dated February 27th, 1930, to execute a removal bond with the Detroit Fidelity and Surety Company as principal and place such bond with the Southern Surety Company as surety on such obligation.

"7. That up to April 15th, 1930, the date I resigned as attorney and adjuster for the Detroit Fidelity and Surety Company, I felt assured that Ashley C. Tobias, Jr., was fully protecting the interests of the Detroit Fidelity and Surety Company, either by filing an answer in the County Court of Spartanburg County, South Carolina, or by removal of the case to the Federal District Court, and I was led to believe this not only because of the various communications on file at the office of the Detroit Fidelity and Surety Company, but by reason of the most able and competent representation of the interests of the Detroit Fidelity and Surety Company in other litigated matters handled by Mr. Tobias for the Detroit Fidelity and Surety Company throughout South Carolina.

"8. That at no time, either before or after referring the case of *Charlie Cannon v. Detroit Fidelity and Surety Company* to Ashley C. Tobias, Jr., for interposing the defense of the Detroit Fidelity and Surety Company did I ever authorize any other attorney or counsellor to represent in any wise whatever the interests of the Detroit Fidelity and Surety Company in the case styled *Charlie Cannon v. R. G. Foster, A. G. Foster, and the Detroit Fidelity and Surety Company.*

"9. That when I referred the case entitled *Charlie Cannon v. R. G. Foster, A. G. Foster, and the Detroit Fidelity and Surety Company* to Ashley C. Tobias, Jr., to interpose our defense, I believed, and I still believe, that the Detroit Fidelity and Surety Company had or has a complete, full and adequate defense to the suit instituted by Cannon.

"Further deponent saith not."

It will be observed that Mr. Tidman in his affidavit states that he resigned as attorney and adjuster for the Detroit Fidelity & Surety Company April 15, 1930. Having severed his connection with the company on that date, April 15, 1930, Mr. Tidman is therefore not in a position to state what transpired regarding the case at bar after that date. He states, however, in effect, that up to the date he resigned he believed the interest of the Detroit Fidelity & Surety Company in the case at bar was being protected, but he does not state that there was any communication regarding the case between any of the parties or that anything transpired regarding the case after returning the verified answer and giving the instruction above mentioned up to the date he left the company's service, which was April 15, 1930, and, as stated above, he is not in a position to say or know what transpired regarding the case after that time. On April 21, 1930, Mr. C. D. Everard, according to his affidavit which was offered on the part of the petitioner, entered the employment of petitioner and performed the duties formerly performed by Mr. Tidman, as attorney and adjuster, and has represented the said Detroit Fidelity & Surety Company in that capacity from said date, April 21, 1930, to the present time. The affidavit of Mr. Everard, as set forth in the transcript of record, reads as follows:

"I, C. D. Everard, of Detroit, Michigan, being duly sworn, do depose and say as follows:

"1. That since the 21st day of April, 1930, I have represented the Detroit Fidelity and Surety Company as attorney and adjuster.

"2. That as a part of the duties I assumed by reason of my employment was the reviewing of certain files and cases theretofore handled by J. B. Tidman, attorney and adjuster of the Detroit Fidelity and Surety Company, who severed his relations with the Detroit Fidelity and Surety Company as of April 15th, 1930.

"3. That I have reviewed practically all cases handled by Mr. Tidman while working for the Detroit Fidelity and Surety Company, and although I have no definite recollection of the fact, I doubtless during my review came across a case entitled *Charles Cannon v. R. G. Foster, A. G. Foster,* and the *Detroit Fidelity and Surety Company,* which was referred by J. B. Tidman, attorney for the Detroit Fidelity and Surety Company, to Ashley C. Tobias, Jr., attorney at law, Columbia, South Carolina, for interposing the defense of the Detroit Fidelity and Surety Company to such suit.

"4. That there is nothing on our files to show that Ashley C. Tobias, Jr., had or has not taken proper precaution to protect the interests of the Detroit Fidelity and Surety Company and interpose its defenses, and if the case has heretofore come to my attention by review, and it doubtless has, my personal experience with the competency, ability and intelligence with which Ashley C. Tobias, Jr., has represented the interests of the Detroit Fidelity and Surety Company in other matters would have allayed any apprehension in me that the interests of the Detroit Fidelity and Surety Company were not being fully protected in this particular case.

"5. That since my employment by the Detroit Fidelity and Surety Company, on April 15, 1930, I have not authorized any attorney other than Ashley C. Tobias, Jr., to represent the Detroit Fidelity and Surety Company in any way whatsoever in connection with the case entitled *Charlie Cannon v. R. G. Foster, A. G. Foster,* and the *Detroit Fidelity and Surety Company.* Further deponent saith not."

It will be observed that Mr. Everard, in his affidavit, other than stating that since April 21, 1930, he has been represent-

ing the petitioner as attorney and adjuster, is rather indefinite in his statements. While he states, in effect, that, as attorney and adjuster for the Detroit Fidelity & Surety Company, it was his duty to review certain files and cases theretofore handled by Mr. Tidman, attorney and adjuster of the Detroit Fidelity & Surety Company, he does not state that he reviewed or handled the file in the case at bar. In this connection he says (which we quote for the second time) : "3. That I have reviewed practically all cases handled by Mr. Tidman while working for the Detroit Fidelity and Surety Company, and although I have *no definite recollection of the fact, I doubtless* during my review came across a case entitled *Charles Cannon v. R. G. Foster, A. G. Foster,* and the *Detroit Fidelity and Surety Company,* which was referred by J. B. Tidman, attorney for the Detroit Fidelity and Surety Company, to Ashley C. Tobias, Jr., attorney at law, Columbia, South Carolina, *for interposing the defense of the Detroit Fidelity and Surety Company to such suit."* (Emphasis ours).

From this it is doubtful whether Mr. Everard ever saw the file in the case at bar. He certainly does not state that he saw such file. Neither does he state that he did anything about the case or made any effort to get any information concerning it, as to its status or in any other respect. In this connection we call attention to the fact that it is commonly known that it is the practice of surety companies to "keep track" of matters handled by them, and especially is this true when suits are instituted for the purpose of obtaining a judgment against a company as such surety. It is difficult to understand why, apparently, no interest was manifested in the case by those in charge of the home office (through which the case at bar was handled) of the surety company from March 1, 1930, until after judgment was obtained against it April 6, 1932. As we understand the position of the petitioner, it undertakes to excuse itself because of having, soon after the service in the case was made upon it,

notified Mr. Tobias, a reputable attorney, to represent its interest. We fully agree with the statement to the effect that Mr. Tobias is a reputable attorney, and, we may add, this Court holds Mr. Tobias in very high esteem, but the facts of this case convince us that the petitioner, itself, was guilty of inexcusable neglect. There are other parts of the record from which the inference may reasonably be drawn, and from which we draw such inference, that in the fall of 1930, along about the latter part of October of that year, the petitioner received information that Mr. Tobias no longer represented the petitioner in the case at bar; and, notwithstanding the fact that petitioner had such information, it did nothing, so far as we are able to ascertain from the record before us, to protect its interest in the case, from March 1, 1930, until after judgment was obtained against it April 6, 1932. In this connection we call attention to the correspondence between attorneys for the plaintiff and Mr. Tobias:

"Mr. Ashley C. Tobias,                                    "October 28, 1930.
"Mr. Nat Turner,
     "Columbia, S. C.
     "Dear Sirs:— Re — *Charlie Cannon v. R. G. and A. G. Foster et al.*

"We assume that you have abandoned your motion to remove the above entitled case to the United States District Court. Notice of your intention so to do was given on or about February 28th of this year. So far as we can learn, no order has been filed in this Court. We have never received your answer. We shall ask you to advise us by return mail with reference to this matter.

                         "Yours very truly,
                              "LYLES & DANIEL,
                              By:"

Messrs. Tobias & Turner, or rather Mr. Tobias acting for the said firm, on the 29th of October, 1930, replied to this letter as follows:

"Messrs. Lyles & Daniel, Attorneys at law, Spartanburg, S. C.

"Attention Mr. Thos. M. Lyles:

"My Dear Tom: In re: *Charlie Cannon v. R. G. and A. G. Foster et al.*

"I have your letter of October 28th with reference to the above captioned matter, and this comes as some surprise, as we had been advised by the Messrs. Fosters that they had retained Messrs. Evans & Galbraith to defend the action for them, and, as we understood, this firm would appear for the surety, without expense to the surety, which expense would be borne by the contractor.

"We are taking the matter up at once with Messrs. Evans & Galbraith, and with the home office of the Surety Company, and will advise you promptly, and, in the meantime, would you be so kind as to indulge us until we can get this information?

"With continued personal regards, I remain,

"Yours very truly,

Ashley C. Tobias."

From this letter of Mr. Tobias, written to Messrs. Lyles & Daniel, it will be observed that, at the time of writing the same, October 29, 1930, he thought that Messrs. Evans & Galbraith, attorneys at Spartanburg, S. C., were taking care of the interests of the surety company. It is further stated, in effect, in this letter that Mr. Tobias at that time was writing the home office of the surety company about the status of the case, using in said letter the following language: "We are taking the matter up at once with Messrs. Evans & Galbraith, and with the home office of the Surety Company, and will advise you promptly, and, in the meantime, won't you be so kind as to indulge us until we can get this information?"

From this letter it can hardly be doubted that the petitioner, the surety company, had information as to the status of the case, and knew or had reason to know in October,

1930, that Mr. Tobias was not representing the surety company for the reason that he thought other attorneys were handling the matter for the surety company. In this connection we call attention to the fact that an examination of the affidavits introduced on behalf of the petitioner fails to reveal any direct denial by the surety company that Mr. Tobias wrote the surety company as he stated in the said letter he was doing. We fail to find in the affidavits introduced on the part of the petitioner any reference to the statements made by Mr. Tobias in his said letter of October 29, 1930, written to Messrs. Lyles & Daniel. In the said letter Mr. Tobias did not say he intended to write the home office of the surety company, but stated in said letter in effect that he was writing the home office of the surety company. If the home office of the surety company did not receive such letter, those in charge of said office could have easily stated this fact in the affidavits they made, which are in the record. But an examination of said affidavits fails to disclose any reference to the same. The statement is made in the affidavit of Mr. Tidman and, also, in the affidavit of Mr. Everard, that no one other than Mr. Tobias was employed or authorized to represent the interest of the surety company in the suit at bar, and the record does not disclose that Messrs. Evans & Galbraith were engaged in the case to represent the interest of the surety company. However, it does appear from the record that soon after the suit was filed Messrs. Evans & Galbraith addressed a letter to the surety company regarding the case, inclosing the copy of summons and complaint served on the Fosters, and received from the surety company a reply to such letter, requesting that they take up the matter with Mr. Tobias. Thereafter, Messrs. Evans & Galbraith wrote Mr. Tobias regarding the case, and received from him a reply to their letter. But the correspondence does not show that Messrs. Evans & Galbraith were employed in the case to represent any of the parties at that time, though the Fosters had spoken to them about the case, and though they

had represented the surety company in other cases. As stated above, the surety company having been made a party defendant and duly served in the cause, it was incumbent upon the surety company to take care of its own interest in the case and not trust its interest to the care of the Fosters, who were the contractors in the case.

The affidavit of Mr. Tobias, appearing in the record, consisting of several pages, will not be quoted herein, for the reason that it would serve no useful purpose, but we shall call attention to such parts of the same as, in our opinion, will throw any light on the questions involved. It appears from this affidavit that Mr. Tobias, in the early part of the year 1930, received from the home office of the Detroit Fidelity & Surety Company the summons and complaint in the action in the case at bar, and that the forwarding letter attached to the said papers was subscribed by Mr. J. B. Tidman, as representing the home office of the said company, and Mr. Tobias is of the impression that thereafter he prepared in the case one or two pleadings or took some legal steps in connection with the litigation. As to what transpired thereafter regarding the case, Mr. Tobias was unable to make any positive statement, for the reason, as he explains in the affidavit, the file in the case was destroyed for the reason that he understood that the interest of the surety company was being represented by the firm of Evans & Galbraith in Spartanburg, and at the personal expense of the contractors, the Messrs. Fosters. This affidavit on the part of Mr. Tobias appears to have been executed some time after judgment was obtained in the case which was in April, 1932, and became of the length of time that had elapsed from the time Mr. Tobias handled the case, in any way the particular facts regarding the same had been forgotten. Mr. Tobias, further, explained the method of keeping files in his office, and stated, in effect, that after a file is closed, on account of accumulation of so many files, it is necessary to destroy those which are of no further use, and in this way the file in the

case at bar was, he assumes, destroyed, and at the time of making this affidavit he had no file to enable him to give or obtain accurate information and, therefore, had to rely as best he could upon his memory, and, on account of having to handle so many different matters and such a length of time had elapsed, he could not give any definite statement regarding the details of handling this case. Of course, in so far as the interest of the plaintiff is affected, it makes no difference to him whether the neglect was at the door of Mr. Tobias or that of the home office of the surety company; and, as stated above, one reasonable inference to be drawn from the facts and circumstances of the case is that, regardless of the negligence of Mr. Tobias, the petitioner is not entitled to have the judgment opened up, for the reason that the surety company was, itself, guilty of inexcusable neglect. In our opinion, it is reasonable to infer from the facts and circumstances of the case that those in charge of the home office of the surety company had information that Mr. Tobias was not representing its interest in the case any longer. Further, there is not a sufficient showing that the surety company manifested a proper interest in defending the suit. As stated above, not only is the party, for which the surety company is bound as surety, named a party to the action, but the surety company, itself, is sued in the case, and from the time service was made upon the surety company it was its duty to look out for its interest. While the employment of an attorney to represent a litigant's interest in a case may be regarded as the first step as showing a proper manifestation of interest, this does not relieve such litigant of further attention to the case and interest in the matter. As shown above, so far as the record discloses, after sending the summons and complaint in the case to Mr. Tobias, and verifying an answer and giving certain authority to execute removal bond, in the early part of the year 1930, the surety company took no further interest in the matter until judgment was obtained against it in April, 1932. The necessary steps for

removal of the case to the United States District Court were not completed, the case was not removed, answer was not served and, further, so far as the record discloses, the home office thereafter made no inquiry about these matters.

In this connection we quote the following from 15 R. C. L., 709: "It seems, however, that a party may be held excusable for relying upon the diligence of counsel, who has been neglectful, only when it appears that he himself has not been neglectful, but has given all proper attention to the litigation."

In this connection we also quote the following from the case of *Gaster v. Thomas*, 188 N. C., 346, 124 S. E., 609, 610: "This Court has held that, 'when a man has a case in court, the best thing he can do is to attend to it.' * * * It has also been held that a person having a suit in court 'shall give it that amount of attention which a man of ordinary prudence usually gives to his important business.'"

In our opinion, the surety company, petitioner herein, has not complied with this salutary rule, and, independent of whether it received information that Mr. Tobias was no longer handling the case, the surety company has failed to show that it manifested the care and gave to the case the attention required under the circumstances, which a person of ordinary prudence usually gives his important business. We do not see how the petitioner can plead surprise, when, according to its own showing, it took no steps in the case and made no inquiry concerning its status from the time it returned to Mr. Tobias the papers above-mentioned, in March, 1930, until after judgment was obtained against it in April, 1932. Its negligence, in our opinion, was inexcusable. In this connection we call attention to the fact that it also appears from the record in the case that the letter of October 30, 1930, written by Mr. Tobias to Messrs. Lyles & Daniel, which letter is quoted above, was the last communication received by Messrs. Lyles & Daniel regarding the case until after judgment had been obtained against the surety com-

pany. The case was on the 30th of October, 1930, docketed in the Court of Common Pleas for Spartanburg County and was set for trial at the January, 1932, term, and placed on the bar roster for trial, which roster was published in two of the local newspapers published in the City of Spartanburg. The case not being reached at that term it was again placed on the bar roster for trial at the April, 1932, term of said Court, and the roster was again published in the local papers of the said City of Spartanburg. Therefore, it cannot be contended that the case was not handled in the "open."

It also appears from the transcript of record in the case at bar that there was negligence on the part of the Detroit Fidelity & Surety Company, or its representatives, in another case which arose against this surety company under the same bond involved in the case at bar. It further appears from the record before us in the case at bar that the license of the Detroit Fidelity & Surety Company to do business in this State expired March 1, 1932, and the said surety company did not renew its license at that time to do business in this State, as shown by the following affidavit of Sam B. King, insurance commissioner for South Carolina:

"Personally appeared before me Sam B. King, who, being duly sworn, says that he is Insurance Commissioner of the State of South Carolina, and, acting in such capacity, is duly authorized to accept service of process against licensed insurance companies, and that the Detroit Fidelity & Surety Company, of Detroit, Michigan, was up until March 31st, 1932, a licensed company, and that records on file in his office disclose that since January 1st, 1929, deponent has accepted service in twenty-two (22) cases brought against the said surety company.

"All insurance companies' licenses automatically expire March 31st, and the Detroit Fidelity & Surety Company did not renew its license at that time.

"The amounts sued for in twenty (20) of these cases

range from $32.42 to $25,000.00, and the twenty (20) aggregate $68,177.58.

"Only summons were filed in this office in the other two (2) cases, and I can not state the amounts sued for."

The contents of this affidavit may well be regarded as additional evidence of negligence on the part of this surety company, and its failure to renew its license to do business in this State when its old license expired may be accepted as some proof of inattention to the case at bar.

It appears from a reading of the decree of the Circuit Judge that his Honor was under the impression that Mr. Tobias was employed by the surety company to represent and defend the action, not only for the surety company, but also for the Foster defendants. We think his Honor was in error as to this. So far as we are able to ascertain from a careful reading of the record, Mr. Tobias was only authorized to represent the interest of the surety company, that the summons and complaint in the case were sent to him for that purpose.

We note that the Detroit Fidelity & Surety Company, petitioner in the cause, as revealed in its petition for a rehearing in the case, is under the impression that Mr. Tobias advised the surety company that a removal of the case to the United States District Court had been completed; also, that Mr. Tobias advised the surety company of the filing of the answer in the case. So far as we have been able to ascertain from the transcript of record in the case, there is no proof contained therein that Mr. Tobias so advised the surety company. Evidently, the petitioner, Detroit Fidelity & Surety Company, has gotten the wrong impression from the record.

There is also contained in the said petition for a rehearing this statement: "Following this, there was some correspondence between Mr. Tobias and the respondent, throughout all which Mr. Tobias stated that he was protecting the interests of the respondent and defending the action."

In the affidavit of Mr. Tidman he has this to say regarding his impression, which throws some light on the contention of the petitioner: "That up to April 15th, 1930, the date I resigned as attorney and adjuster for the Detroit Fidelity & Surety Company, I felt assured that Ashley C. Tobias, Jr., was fully protecting the interests of the Detroit Fidelity & Surety Company, either by filing an answer in the County Court of Spartanburg County, South Carolina, or by removal of the case to the Federal District Court, and I was led to believe this not only because of the various communications on file at the office of the Detroit Fidelity & Surety Company, but by reason of the most able and competent representation of the interest of the Detroit Fidelity & Surety Company in other litigated matters handled by Mr. Tobias for the Detroit Fidelity and Surety Company throughout South Carolina."

While it will be observed that Mr. Tidman, in his affidavit, claims to have been led to believe for the reason he states, that the case had been removed to the United States District Court, or that answer in the case had been filed, it will also be observed that Mr. Tidman does not state in his affidavit that Mr. Tobias "stated (to the petitioner) that he was protecting the interest of the respondent and defending the action," as now contended by the petitioner. If petitioner had any letters containing such proof, the same should have been presented to the Court. Further, if the petitioner had any other letters that would give the Court any light on the questions involved, the same should have been presented to the Court. We fail to find in the transcript of record any correspondence that passed between Mr. Tobias and the surety company. Mr. Tobias in his affidavit states that his file was destroyed, but the home office of the surety company makes no contention that its file was destroyed, and surely it has in its file the letters and other communications received from Mr. Tobias, and has in its files copies of letters and other communications it addressed to Mr. Tobias.

148

We wish, also, to call attention to the fact that, under the facts and circumstances of the case, it is our opinion that the certificate attached to the petition presented to the Circuit Judge for vacating the judgment in the case should have contained a statement of the facts relied upon as giving a meritorious defense. This was not done. It seems from the argument presented on behalf of petitioner to this Court that petitioner relies solely upon the testimony of the plaintiff, taken at the trial of the case, as making out a complete defense for the defendants. This, however, was not stated in the certificate attached to the said petition. But, as stated above, the main question in the appeal is whether or not the petitioner has shown excusable neglect in allowing the judgment in the case to go against it. For the reasons we have assigned herein we do not think he has done this, and we therefore think that his Honor, the Circuit Judge who heard the matter on the Circuit, under the facts and circumstances of the case, erred in reaching a conclusion to the contrary. In this connection we wish to further state, in answer to the position of petitioner, that a reversal of the order of the Circuit Judge in this case does not mean that we think the Circuit Judge abused his discretion, in vacating the judgment in the case, but it means that this Court is of the opinion that his Honor, the Circuit Judge, reached the wrong conclusion under the facts of the case, as we view the same. Also, in view of the fact that so many seem to have the wrong impression as to the meaning and use of the phrase "abuse of discretion," we quote what our Court has stated in recent cases regarding its meaning and use. In the case of *Barrett v. Broad River Power Company,* 146 S. C., 96, 143 S. E., 650, 654, Mr. Justice Blease, now Chief Justice, as the organ of the Court, made this statement regarding the meaning and use of the phrase: "We are sure that in many instances, in the years gone by, the rulings of presiding Judges, in matters wherein they are given the right to exercise their discretion, were not interfered with because

of the old unfortunate statement to the effect that it must be shown that there was an "abuse of discretion." Recently it has been shown time after time that the term "abuse of discretion" does not mean any reflection upon the presiding Judge, and it is a strict legal term, to indicate that the appellate Court is simply of the opinion that there was commission of an error of law in the circumstances."

In the case of *Bishop et al. v. Bishop,* 164 S. C., 496, 162 S. E., 756, 757, Judge S. W. G. Shipp, Circuit Judge, acting as Associate Justice in the case, speaking for the Court, stated: "Ordinarily, the granting or refusing of motions to consolidate actions for trial must be left to the wise discretion of the trial Judge, but his exercise thereof will be disturbed, if it deprives a party of a substantial right, which he can show he is entitled to under the law. 'Abuse of discretion,' as used in this connection, merely means that the trial Judge committed an error of law in the circumstances. It has been shown time after time that the term 'abuse of discretion' does not mean any reflection upon the presiding Judge, and it is a strict legal term to indicate that the appellate Court is simply of the opinion that there was a commission of an error of law in the circumstances. *Barrett v. Broad River Power Co.,* 146 S. C., 85, 143 S. E., 650."

We quote, also, what Mr. Justice Bonham, as the organ of the Court, stated in the recent case of *Payne v. Cohen et al.,* 168 S. C., 466, 167 S. E., 665, 668: "It is well to state here that this Court has held that the phrase 'abuse of discretion' does not carry with it an implication of conduct deserving censure, but means simply that the trial Judge committed error of law—in the exercise of his discretion."

We wish to further state that, in our opinion, it is right and proper that the judgment in the case should stand. The plaintiff in a case has rights as well as a defendant, and, in the case at bar, the defendant Detroit Fidelity & Surety Company has failed to convince us that it is entitled to be excused for its neglect, and, on the other hand, the plaintiff

in the case, granting that the burden to do so is upon him, has convinced us, under the facts and circumstances revealed by the transcript of record, that the petitioner should not be excused for its neglect, and that the judgment in the case should stand. While we have not herein made specific reference to every position urged or suggested by counsel, the conclusion announced has been reached after consideration of the entire record before us, including the briefs filed in the case.

It is therefore the judgment of this Court that the order of the Circuit Judge appealed from be, and the same is hereby, reversed, and that the judgment rendered for the plaintiff in the case be allowed to stand.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and BONHAM concur.

### ORDER ON PETITION FOR REHEARING

*Per curiam.*

Upon consideration of the petition for a rehearing in this case, filed on behalf of the defendant Detroit Fidelity & Surety Company, and being satisfied that this Court reached the right conclusion in the case, as expressed in its opinion hereinbefore filed, it is ordered that a rehearing in the case be, and is hereby, refused, and the petition for a rehearing dismissed. For the purpose, however, of clarification, that the holding of the Court may be better understood, the opinion in the case has been redrafted. It is therefore further ordered that the opinion herebefore filed in the case be, and same is hereby, withdrawn, and the attached opinion, in lieu thereof, filed as the opinion of the Court in said case. It is also ordered that the remittitur in the case be held by the Clerk of this Court for the usual ten days after the filing of the attached opinion.